UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| ANDREA BILICH NOVARRO, | : | |
| | : | |
| Plaintiff, | : | No.: 1:17-cv-7304 |
| | : | |
| - against - | : | **INDVIDUAL AND CLASS ACTION COMPLAINT** |
| CLAIROL, CORP., | : | |
| BRISTOL-MYERS SQUIBB, INC., and | : | |
| JOHN DOES 1-6, | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Andrea Bilich Novarro ("Ms. Novarro" or "Plaintiff"), by and through her attorneys, Quainton Law, PLLC, for herself and on behalf of all others similarly situated, as and for her Complaint against Defendants, Clairol Corp. ("Clairol"), Bristol-Myers Squibb, Inc. ("Bristol-Myers" or the "Company"), and John Does 1-6 (collectively, "Defendants"), alleges and states as follows:

## INTRODUCTION

1.    This is an action resulting from the misclassification of Ms. Novarro, a former market research analyst at Clairol, a wholly-owned subsidiary of Bristol-Myers, and other similarly situated workers.  Ms. Novarro was classified as an independent contractor despite incontrovertible evidence that she was in fact an employee.  After an IRS investigation, Defendants rectified the misclassification of Ms. Novarro on a prospective basis, but misrepresented to her that she was ineligible for retrospective benefits including participation in the applicable Employment Retirement Income Security Act ("ERISA") plans, as well as paid medical and sick leave, employee compensation, annual bonuses, paid vacation and holidays, insurance and tax benefits,

and opportunities to participate in the Company's stock purchase and stock option plans.  In addition, Defendants deliberately concealed from Ms. Novarro until August, 2017 that the ERISA retirement plans for which she would have been eligible were modified in 1997, the year before she was reclassified as an employee. Ms. Novarro seeks damages resulting from her misclassification and Defendants' subsequent attempts to prevent her from obtaining the retroactive employee benefits to which she is entitled.  Ms. Novarro also seeks certification of a class of Bristol-Myers and Clairol workers who were employed as independent contractors before the modification of the ERISA retirement plan in 1997, were reclassified as employees after the modification, and were also wrongly deprived of benefits under the plans in effect before the 1997 modification.

## PARTIES, JURISDICTION AND VENUE

2.   Bristol-Myers is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 345 Park Avenue, New York, NY 10154.

3.   Clairol is a corporation organized under the laws of Delaware, with its principal place of business at 1 Blachley Rd Stamford, CT 06902.   Clairol was a wholly-owned subsidiary of Bristol-Myers until May, 2001, when it was sold to Proctor & Gamble.

4.   John Does 1-6 are fictitious names for individuals believed to bear personal responsibility for the conduct complained of in this complaint.

5.   Ms. Novarro is a resident of the State of New York, residing at 123 Darcy Circle, Islip, NY 11751.  Ms. Novarro was formerly known as Ms. Bilich and may be identified as Ms. Andrea Bilich in certain company records.

6.   Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action under the Employee Retirement Income Security Act,  29 U.S.C.A. § 1001 et seq.  In addition, this Court

has supplemental jurisdiction over the subject matter of other claims asserted herein pursuant to 28 U.S.C. §1367.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Southern District is the District where one or more of the Defendants have their principal place of business or residence and where a substantial portion of the conduct complained of herein took place.

## GENERAL ALLEGATIONS

## MS. NOVARRO'S INITIAL EMPLOYMENT

8.    On November 2, 1987, Ms. Novarro was hired as a market research assistant for Clairol's Consumer Research Forum (the "Forum").

9.    The Forum was an in-house market research facility in which qualitative research studies were conducted for Clairol R&D, Marketing and Packaging, as well as other Bristol-Myers departments.   Studies included product usage, packaging, advertising, directions, claims, and concept testing.

10.  As a market research assistant, Ms. Novarro was trained in, among other things, conducting meetings with project requestor(s), determining research project methodology, design recruitment screening materials and questionnaires, conducting interviews with respondents/participants, coding and tabulating the results of the studies and preparing a written report of findings and recommendations.

11.  Ms. Novarro received professional training from Bristol-Myers that she would use throughout her career with the Company.

12.  On December 2, 1991, due to a corporate downsizing Ms. Novarro was laid off.

## MS. NOVARRO'S REHIRING AS AN "INDEPENDENT CONTRACTOR"

13.  At the beginning of 1992, Ms. Novarro was contacted by her former manager, Ms. Brenda Fabriani (the "Manager"), and was asked to resume her work as an "independent contractor" starting on February 25, 1992.

14.  Despite this new title, Clairol/Bristol-Myers directed Ms. Novarro to return to the same office, in the same Bristol-Myers building and on the same floor where she had been previously employed, and to continue to work on the same projects for which she had formerly been responsible.

15.  Clairol/Bristol-Myers indicated that Ms. Novarro's future employment would not have a definite end-date or be contingent on the completion of a specific project.

16.  On February 25, 1992, Ms. Novarro returned to her former office located at 345 Park Avenue, New York, NY, which is also Bristol-Myers corporate headquarters.

17.  Ms. Novarro was given a company employee picture identification card for building and floor access. Ms. Novarro was given the same ID card she had had when she was classified as an employee. This ID card was of the same size and appearance, and made of the same materials, as the one given to other employees.

18.  Ms. Novarro's nameplate was posted on her office door.

19.  Clairol/Bristol-Myers provided Ms. Novarro with a computer, telephone, voicemail, corporate email address as well as with all other necessary office supplies.

20.  The research studies performed by Ms. Novarro were an integral part of Clairol's regular and ongoing business, which was to research the market, to manufacture and to sell beauty products, and Ms. Novarro was functionally integrated into Clairol's regular and ongoing business practices.

21. For the six years she was misclassified, Ms. Novarro was required to report to the Bristol-Myers offices every Monday, Tuesday and Thursday on a regular schedule.  In addition, Ms. Novarro worked one day a week from home.  However, Ms. Novarro was not entitled to holidays, sick leave or vacation days.

22. Clairol/Bristol-Myers shipped a corporate computer along with the floppy discs to her home address, so that Ms. Novarro could fulfill her duties when she was working remotely.

23. On the days set for her to report to work at the Bristol-Myers office, Ms. Novarro was required to notify her manager if she was late.

24. Ms. Novarro's manager called Ms. Novarro to work meetings, gave her assignments, and supervised the quality of her work.

25. Finally, Ms. Novarro continued to service the same corporate departments in the same manner as she had previously.

26. During the six-year period Ms. Novarro was misclassified she never advertised her services as an independent contractor and never sought or obtained employment from an employer other than Clairol/Bristol-Myers.  Ms. Novarro devoted herself entirely to the business of Clairol/Bristol-Myers.

27. Starting in 1994, Clairol/Bristol-Myers experienced a sharp increase in its workflow and the Company hired a number of new "consultants."

28. The Forum's department ultimately included ten consultants classified as "independent contractors," including Ms. Novarro.  These consultants were also functionally employees, with fixed hours of work, Bristol-Myers offices, computers and phones, and hierarchical, subordinate relationships to supervisors who assigned them tasks in the same manner as to other employees.

29. In October, 1995, for the first time, Clairol presented Ms. Novarro with an independent contractor agreement, which did not alter Ms. Novarro's functional status as an employee as set forth in paragraphs 14-26 above. Neither Clairol nor Bristol-Myers explained to Ms. Novarro that it is the nature of an employment relationship, and not the label put on such relationship, that determines a worker's status as an independent contractor or employee. Ms. Novarro executed the agreement in 1995 and in subsequent years until her formal reclassification as an employee as described below.

## MS. NOVARRO'S RECLASSIFICATION AS AN EMPLOYEE

30. On information and belief, in early 1998, the Internal Revenue Service (the "IRS") conducted an investigation of employment practices at Clairol and/or Bristol-Myers, focusing particularly on the classification of certain workers as independent contractors.

31. On information and belief, at the completion of the investigation, the IRS concluded that Ms. Novarro and other workers had been misclassified as independent contractors.

32. In September, 1998, Ms. Novarro and others were re-hired as formal employees of Clairol/BMS with full employee benefits.

33. After her reclassification, Ms. Novarro's work conditions remained unchanged.

## CLAIROL/BRISTOL-MYERS' MISREPRESENTATIONS

34. After she was re-hired, Ms. Novarro inquired whether she was entitled to retroactive adjustment for compensation and benefits earned or accrued during the period she had been misclassified.

35. Ms. Novarro was expressly and explicitly told by her Manager that Ms. Novarro was not entitled to **any** retroactive adjustments or payments – whether with respect to compensation,

benefits, taxes, pension accruals or otherwise – for the period when she had been misclassified as an independent contractor.

36. Ms. Novarro's Manager was acting within the scope of her duties and at the direction of her superiors when she made the false statements as to Ms. Novarro's rights.

37. On information and belief, Clairol and/or Bristol-Myers, and John Does 1-6 acted intentionally or recklessly to deceive Ms. Novarro with false information and/or acted deliberately or recklessly to conceal material information as to her rights from her.

38. Ms. Novarro had developed a relationship of trust with her Manager, who had been Ms. Novarro's supervisor for a ten-year period, and had no reason to disbelieve her. On information and belief, Clairol and/or Bristol-Myers used the Manager to prevent Ms. Novarro from attaining rights to which she was entitled as a common law employee.

39. In addition, Clairol and Bristol-Myers failed to provide Ms. Novarro with any documentation describing ERISA plans in effect during the period she had been misclassified (the "Retirement Plans"), or any brochures or other information describing any other benefits or remedies that might be available to her. In fact, Clairol, Bristol-Myers and John Does 1-6 deliberately or recklessly concealed material facts relating to misclassified common law employees under ERISA and otherwise from Ms. Novarro until August, 2017 when Bristol-Myers admitted it had modified its Retirement Plans as discussed below.

40. On or about January 1, 1997, in response to litigation brought by former independent contractors against Microsoft Corporation in the widely followed case of Vizcaino v. Microsoft, Bristol-Myers modified its Retirement Plans to exclude reclassified independent contractors or common law employees from eligibility for benefits.

41.  All such modified plans are referred to as the "Modified Plans."  The plans in effect prior to the January 1, 1997 modifications are referred to as the "pre-Modified Plans."

42.  The Modified Plans did not and do not apply retroactively and pre-Modified Plans were available to common law employees such as Ms. Novarro. Had Ms. Novarro been reclassified on December 30, 1996 she would have been eligible for retroactive pension plan adjustments under the pre-Modified Plans.

43.  Defendants were aware that Ms. Novarro was eligible for retroactive benefits and deliberately concealed such facts from Ms. Novarro.  Defendants knew that if Ms. Novarro had been made aware of her rights under the pre-Modified Plans she would have pursued her rights under such plans.  In concealing Ms. Novarro's rights, Defendants, on information and belief, were motivated by the desire to cut off retrospective liability to a much larger group of misclassified employees, particularly given the labor climate at the time exemplified by the Microsoft litigation and the IRS investigation.

44.  In fact, Defendants did not inform Ms. Novarro of the adoption of the Modified Plans until August, 2017 in discussions with counsel for Bristol-Myers as discussed below.

45.  On March 29, 2002, Ms. Novarro's employment was terminated.

**MS. NOVARRO'S DISCOVERY OF HER CLAIMS**

46.  For years following her termination from Clairol/Bristol-Myers, Ms. Novarro had no reason to revisit the unequivocal representations that had been made to her after her reclassification peremptorily stating that she had no right to any retroactive compensation or benefits payments or adjustments.  Defendants continued to conceal from Ms. Novarro material information concerning the adoption of the Modified Plans and Ms. Novarro's rights under the pre-Modified Plans.

47.  On December 1, 2015, Ms. Novarro consulted a disability attorney about an unrelated back injury.  The attorney indicated that, based on his review of Ms. Novarro's records, it appeared that Clairol/Bristol-Myers had not paid the employer share of Ms. Novarro's taxes during the 1992-1998 time period.  The attorney did not, however, mention any other claims or remedies that might be available to Ms. Novarro.

48.  Several months later, on May 12, 2016, Ms. Novarro consulted another law firm, McIntyre, Donohue, Accardi, Salmonson & Riordan LLP ("McIntyre"), about her back injury.

49.  McIntyre stated that they believed Ms. Novarro had the right to request reimbursement of expenses and obtain recovery of employee benefits of which she had been deprived during the period she was misclassified as an independent contractor, including pension benefits.

50.  Until her meetings with the attorneys identified above, Ms. Novarro had no reason to doubt the veracity of Defendants' representation that Ms. Novarro was not entitled to retroactive compensation or benefits.  The statements of Ms. Novarro's Manager had been so categorical, and the two women had worked together for so long, that Ms. Novarro had no reason to suspect she was being misled.  With respect to Ms. Novarro's ERISA rights, Ms. Novarro had no possible way of knowing that the plans that should have covered her had been modified in an attempt to cut off retrospective liability to misclassified independent contractors and common law employees.

## MS. NOVARRO'S RIGHTS AS AN EMPLOYEE

51.  Following her meetings with the attorneys identified above, Ms. Novarro investigated further and identified additional benefits of which she was deprived as a result of her misclassification.

52.  Between 1992 and 1998 Ms. Novarro gave birth to two children, each time going on unpaid maternity leave.  As an employee, Ms. Novarro would have been entitled to paid maternity

leave.  In addition, during the 1992-1998 period, Ms. Novarro did not receive annual bonuses, paid sick days, paid vacation and paid holiday days—all benefits to which she would have been entitled had she been properly classified as an employee.

53.  Ms. Novarro was also deprived of the right to participate in the Company's stock purchase and stock option plans.  She also paid for life, medical, vision and dental insurance out of her own pocket and paid the company portion of her own Social Security taxes.

54.  Finally, Ms. Novarro did not benefit from any contributions to any Retirement Plans, whereas contributions were made to these plans for periods when she was classified as an employee.

## ATTEMPTS TO RESOLVE MATTER AMICABLY WITH BRISTOL-MYERS

55.  After Ms. Novarro had ascertained the scope of the benefits of which she had been deprived, on August 25, 2016, Ms. Novarro contacted Ms. Ann Powel Judge at the Bristol-Myers human resource department, providing an outline of her work history and the salient facts surrounding her misclassification.

56.  Ms. Judge did not respond to Ms. Novarro. Instead, Ms. Margaret Cino ("Ms. Cino"), a senior counsel with Bristol-Myers, responded on September 20, 2016 acknowledging Ms. Novarro's "important matter."

57.  Ms. Cino stated that Bristol-Myers was "working on pulling records from storage" and promised to "follow-up with a more complete response."

58.  For the following seven months, Ms. Novarro has been attempting to work in good faith with Bristol-Myers to resolve her dispute amicably.

59.  Ms. Novarro has been repeatedly told that Bristol-Myers is looking into her matter, will "get back" to her, will "respond" to her and will discuss her grievances, lulling Ms. Novarro

into deferring legal action and continuing its practice of acting to prevent misclassified workers from taking action to enforce their rights.

60. In March, 2017, Bristol-Myers designated the law firm of Morgan, Lewis & Bockius to respond to Ms. Novarro's claims.  For the first time, in August, 2017, Defendants admitted that the Retirement Plans in effect during the years Ms. Novarro was misclassified had been modified and now excluded common law employees and misclassified independent contractors.

61. However, Defendants denied that Ms. Novarro was entitled to benefits under the pre-Modified Plan and the present lawsuit has ensued.

**COUNT I – VIOLATION OF ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

62. Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "61" above.

63. The Bristol-Myers' Retirement Plans were established in accordance with, and continue to be subject to, ERISA, 29 U.S.C. § 1001 et seq.   On information and belief, the pre-Modified Plans did not exclude misclassified "independent contractors" and/or common law employees such as Ms. Novarro.

64. As a result, Ms. Novarro was entitled to benefits under the pre-Modified Plan.

65. Ms. Novarro has not been provided with benefits under the pre-Modified Plan.

66. The Retirement Plans, including the pre-Modified Plans, are and have been administered by a Pension Committee of Bristol-Myers.  The members of the Pension Committee are or were officers and directors of Bristol-Myers and/or Clairol, including John Does 1-6.

67. Demand on the pre-Modified Plan administrators would be futile because of the substantial identity of members of Bristol-Myers management and members of the Pension Committee and Bristol-Myers senior management has refused to acknowledge that Ms. Novarro

is entitled to benefits under the pre-Modified Plan. Demand on the pre-Modified Plan administrators would further be futile because the pre-Modified Plans are no longer in existence.

68. Ms. Novarro was only notified of the existence of the pre-Modified Plan in August, 2017.

69. As a result of the foregoing, Ms. Novarro is entitled to damages in an amount to be determined at trial resulting from the improper denial of benefits under the pre-Modified Plans.

**COUNT II – BREACH OF FIDUCIARY DUTY**
**ERISA§ 502(a), 29 U.S.C. 1132(a)**

70. Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "69" above.

71. Clairol, Bristol-Myers and/or John Does 1-6 are ERISA fiduciaries because of their power to control and direct the operation of the Pension Committee and because of the substantial identity of senior officers and directors of Clairol and Bristol-Myers and members of the Pension Committee.

72. Clairol, Bristol-Myers and/or John Does 1-6 owed Ms. Novarro a fiduciary duty to provide her with complete and accurate information as to her rights, including that her rights under the pre-Modified Plans were materially modified on January 1, 1997, and to provide the Pension Committee with accurate information concerning the dates of her eligibility for coverage under the pre-Modified Plans.

73. Clairol, Bristol-Myers and/or John Does 1-6 breached their fiduciary duties by failing to provide the Pension Committee with accurate information concerning the dates of Ms. Novarro's eligibility for coverage under the pre-Modified Plans, failing to inform Ms. Novarro of her eligibility for benefits under the pre-Modified Plans, that the pre-Modified Plans had been modified, failing to provide Ms. Novarro with a summary plan description of the pre-Modified

Plans, and failing to provide Ms. Novarro with information concerning administrative procedures for obtaining benefits under the pre-Modified Plans.

74.   As a result of the foregoing, Clairol, Bristol-Myers and John Does 1-6 are liable to Ms. Novarro for damages in an amount to be determined at trial resulting from Defendants' breach of their fiduciary duties under ERISA.   Ms. Novarro is further entitled to an equitable adjustment of her retirement benefits under the Retirement Plan currently in effect with a full credit for the period from February 25, 1992 to January 1, 1997 as though Ms. Novarro had been duly enrolled in the pre-Modified Plan in effect for such period.

## COUNT III – DISCRIMINATION AND INTERFERENCE WITH PROTECTED RIGHTS UNDER ERISA § 510, 29 U.S.C. § 1140

75.   Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "74" above.

76.   Clairol, Bristol-Myers and John Does 1-6 actively sought to interfere with the attainment of Ms. Novarro's rights under ERISA §510 by amending the applicable pre-Modified Plans to exclude misclassified "independent contractors" and common law employees from such plans and then reclassifying Ms. Novarro, thereby seeking to deprive Ms. Novarro of accrued benefits under the pre-Modified Plans.

77.   Clairol, Bristol-Myers and John Does 1-6 further sought to interfere with the attainment of rights by Ms. Novarro by failing to provide the Pension Committee with accurate information concerning the dates of Ms. Novarro's eligibility for benefits under the pre-Modified Plans, failing to inform Ms. Novarro that the pre-Modified Plans had been modified, failing to provide Ms. Novarro with a summary plan description of the pre-Modified Plans, and failing to provide her with information concerning administrative procedures for obtaining benefits under the pre-Modified Plans.

78. Clairol, Bristol-Myers and John Does 1-6 further sought to interfere with the attainment of rights by Ms. Novarro by misrepresenting to her that she was ineligible for retroactive pension benefits under the pre-Modified Plans.

79. As a result of the foregoing, Ms. Novarro is entitled to damages in an amount to be determined at trial, together with costs and attorneys' fees under ERISA § 510, 29 U.S.C § 1140.

**COUNT IV–**
**COMMON LAW BREACH OF FIDUCIARY DUTY**

80. Ms. Novarro repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "79" above.

81. Clairol, Bristol-Myers and John Does 1-6 had a duty to communicate truthfully and accurately with reclassified employees and to ensure that persons responsible for communicating crucial information to employees communicated all relevant information to reclassified employees.

82. Defendants breached their fiduciary duty by falsely stating, and/or causing false statements to be made, that Ms. Novarro had no right to any retroactive adjustments for any periods during which she was misclassified as an independent contractor.

83. Defendants further concealed material information from Ms. Novarro as to her rights to retroactive benefits during the period of her misclassification.

84. On information and belief, the Company, Clairol and John Does 1-6 had full knowledge of Ms. Novarro's rights and deliberately concealed material information from her and/or ensured that false information would be transmitted to Ms. Novarro to prevent her from enforcing her rights.

85. As a result, Clairol, Bristol-Myers and John Does 1-6 are liable to Ms. Novarro for damages in an amount to be determined at trial, including but not limited to the value of annual

bonuses, paid maternity leave, paid medical and sick leave, vacation and holiday pay, insurance coverage and tax benefits, and participation in the Company's stock purchase and stock option plans.

**COUNT V – INDIVIDUAL CLAIM**
**FRAUDULENT MISREPRESENTATION**

86.  Ms. Novarro repeats and realleges each allegation set forth in paragraphs numbered "1" through "85" above.

87.  Bristol-Myers/Clairol knowingly, intentionally and/or recklessly acted to ensure that false statements would be made to Ms. Novarro that Ms. Novarro had no right to retroactive compensation or benefits adjustments for periods during which Ms. Novarro had been misclassified as an independent contractor.

88.  Bristol-Myers, Clairol and John Does 1-6 caused false statements to be made to Ms. Novarro in order to induce her not to pursue legal remedies to which she was entitled, and deliberately or recklessly concealed material facts from her.

89.  Ms. Novarro reasonably relied on the false statements made to her because she had worked under the same manager for ten years and had developed a relationship of trust with her and had no reason to suspect that she was being misled.

90.  Ms. Novarro' Manager was acting in the scope of her employment and at the direction and/or with the knowledge and approval of her superiors when she made her false and misleading statements to Ms. Novarro.

91.  The false and fraudulent statements regarding Ms. Novarro's rights were deliberately or recklessly made, and material facts were deliberately or recklessly concealed, to cause Ms. Novarro not to pursue any claims against Clairol, Bristol-Myers and/or John Does 1-6.

15

92.  As a result of the foregoing, Clairol and Bristol-Myers are liable to Ms. Novarro for damages in an amount to be determined at trial, including but not limited to the value of benefits not subject to ERISA, including annual bonuses, paid maternity leave, paid medical and sick leave, vacation and holiday pay, insurance coverage and tax benefits, and participation in the Company's stock purchase and stock option plans.

## COUNT VI – DECLARATORY JUDGMENT

93.  Ms. Novarro repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "92" above.

94.  The "independent contractor" agreements executed by Ms. Novarro are void, invalid and unenforceable because Ms. Novarro was in fact an employee during the period covered by her alleged "independent contractor" agreements, and Ms. Novarro was in fact subject to an implied-in-fact contract as a common law employee.

95.  As a result of the foregoing, Ms. Novarro is entitled to a declaratory judgment that said independent contractor agreements are void, invalid and unenforceable and that Ms. Novarro was employed under an implied-in-fact contract from February 25, 1992 to September, 1998.

## COUNT VII – BREACH OF IMPLIED-IN-FACT CONTRACT

96.  Ms. Novarro repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "95" above.

97.  Ms. Novarro was a common law employee throughout the period of her employment employed under an implied-in-fact employment contract.

98.  Clairol and/or Bristol-Myers breached this implied-in-fact contract by failing to provide Ms. Novarro with the non-ERISA benefits to which she was entitled, including but not

limited to annual bonuses, paid medical and sick leave, vacation and holiday pay, insurance coverage and tax benefits, and participation in the Company's stock purchase and stock option plans.

99.  Clairol, Bristol-Myers and their agents intentionally or recklessly deceived Ms. Novarro as to her rights and/or deliberately or recklessly concealed material facts from Ms. Novarro that prevented her from asserting her clams until she obtained actual knowledge of her rights.

100. As a result of the foregoing, Clairol and Bristol-Myers are liable to Ms. Novarro and all similarly situated workers for damages in an amount to be determined at trial.

<u>**COUNT VIII- CLASS COMPLAINT**</u>
<u>**VIOLATION OF ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**</u>

101. Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "100" above.

102. The Bristol-Myers' Retirement Plans were established in accordance with, and continue to be subject to, ERISA, 29 U.S.C. § 1001 <u>et seq.</u> On information and belief, the pre-Modified Plans did not exclude misclassified "independent contractors" and/or common law employees such as Ms. Novarro and other similarly situated workers employed by Bristol-Myers or Clairol.

103. Workers misclassified as independent contractors while the pre-Modified Plan was in effect and reclassified as employees after the modification of the pre-Modified Plan on January 1, 1997 (the "Class Members") are entitled to pension benefits under the pre-Modified Plans.

104. The Class Members have been deprived of benefits to which they are entitled under the pre-Modified Plan.

105. Demand on the administrations of the Retirement Plans currently in effect would be futile because of the substantial identity of members of Bristol-Myers management and members of the Pension Committee and Bristol-Myers senior management has refused to acknowledge that any Class Members are entitled to benefits under the pre-Modified Plan.  Demand on the pre-Modified Plan administrators would further be futile because the pre-Modified Plans are no longer in existence.

106. Class Members have had no means of ascertaining their rights because they were not provided with summary plan descriptions of the pre-Modified Plans during the period of their misclassification and the summary plan descriptions under the subsequent modified Retirement Plans contain or contained no description of their rights under the pre-Modified Plans.

107. As a result of the foregoing, the Class Members are entitled to damages in an amount to be determined at trial resulting from the improper denial of benefits under the pre-Modified Plans.

## COUNT IX– BREACH OF FIDUCIARY DUTY
### ERISA§ 502(a), 29 U.S.C. 1132(a)

108. Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "107" above.

109. Clairol, Bristol-Myers and/or John Does 1-6 are ERISA fiduciaries because of their power to control and direct the operation of the Pension Committee and because of the substantial identity of senior officers and directors of Clairol and Bristol-Myers and members of the Pension Committee.

110. Clairol, Bristol-Myers and/or John Does 1-6 owed Ms. Novarro a fiduciary duty to provide Class Members with complete and accurate information as to her rights, including that their rights under the pre-Modified Plans were materially modified on January 1, 1997, and to

provide the Pension Committee with accurate information concerning their dates of eligibility for coverage under the pre-Modified Plans.

111. Clairol, Bristol-Myers and/or John Does 1-6 breached their fiduciary duties by failing to provide the Pension Committee with accurate information concerning the dates of Class Members' eligibility for coverage under the pre-Modified Plans, failing to inform Class Members of their eligibility for benefits under the pre-Modified Plans, failing to inform Class Members that the pre-Modified Plans had been modified, failing to provide Class Members with a summary plan description of the pre-Modified Plans, and failing to provide Class Members with information concerning administrative procedures for obtaining benefits under the pre-Modified Plans.

112. As a result of the foregoing, Clairol, Bristol-Myers and John Does 1-6 are liable to the Class Members for damages in an amount to be determined at trial resulting from Defendants' breach of their fiduciary duties under ERISA.  The Class Members are further entitled to an equitable adjustment of their retirement benefits under the Retirement Plan currently in effect with a full credit for the period from February 25, 1992 to January 1, 1997 as though the Class Members had been duly enrolled in the pre-Modified Plan in effect for such period.

## COUNT X – CLASS CLAIM
## DISCRIMINATION AND INTERFERENCE
## WITH PROTECTED RIGHTS UNDER ERISA § 510, 29 U.S.C. § 1140

113. Ms. Novarro repeats and realleges each of the allegations set forth in paragraphs "1" through "110" above.

114. Clairol, Bristol-Myers and John Does 1-6 actively sought to interfere with the attainment of Class Members' rights under ERISA §510 by amending the applicable pre-Modified Plans to exclude misclassified "independent contractors" and common law employees from such

plans and then reclassifying the Class Members as employees, thereby seeking to deprive the Class Members of accrued benefits under the pre-Modified Plans.

115. Clairol, Bristol-Myers and John Does 1-6 further sought to interfere with the attainment of rights by the Class Members by failing to provide the Pension Committee with accurate information concerning the dates of Class Members' eligibility for benefits under the pre-Modified Plans, failing to inform the Class Members that the pre-Modified Plans had been modified, failing to provide the Class Members with a summary plan description of the pre-Modified Plans, and failing to provide the Class Members with information concerning administrative procedures for obtaining benefits under the pre-Modified Plans.

116. On information and belief, Clairol, Bristol-Myers and John Does 1-6 further sought to interfere with the attainment of rights by the Class Members by misrepresenting to them that they were ineligible for retroactive pension benefits under the pre-Modified Plans.

117. As a result of the foregoing, the Class Members are entitled to damages in an amount to be determined at trial, together with costs and attorneys' fees under ERISA § 510, 29 U.S.C § 1140.

## COUNT XI – CLASS CLAIM
## COMMON LAW BREACH OF FIDUCIARY DUTY

118. Ms. Novarro repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "117" above.

119. Clairol, Bristol-Myers and John Does 1-6 had a duty to communicate truthfully and accurately with reclassified employees and to ensure that persons responsible for communicating crucial information to employees communicated all relevant information to reclassified employees.

120. Defendants breached their fiduciary duties to the Class Members by making false statements concerning such Class Members' rights and/or concealing material information from the Class Members as to their rights to retroactive benefits during the period of their misclassification.

121. As a result, Clairol, Bristol-Myers and John Does 1-6 are liable to the Class Members for damages in an amount to be determined at trial, including but not limited to the value of annual bonuses, paid maternity leave, paid medical and sick leave, vacation and holiday pay, insurance coverage and tax benefits, and participation in the Company's stock purchase and stock option plans.

## CLASS REPRESENTATION ALLEGATIONS

122. The Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, the Class Members number in the hundreds. The precise number of Class Members and their identities are unknown at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the records of Defendants.

123. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether misclassified independent contractors and common law employees were entitled to benefits under the pre-Modified Plans, whether the modification of the pre-Modified Plans on January 1, 1997 had retroactive effect on the rights of misclassified Class Members, whether Defendants provided the relevant ERISA plans with accurate dates of benefits eligibility under the pre-Modified Plan, whether Defendants misrepresented Class Members' eligibility for retroactive benefits payments, whether Defendants concealed material information

from Class Members necessary for Class Members to enforce their rights, whether Defendants deliberately or recklessly sought to prevent Class members from obtaining retroactive benefit payments for periods during which they were misclassified, and whether Defendants breached their fiduciary duties as a result of the foregoing.

124. The claims of Ms. Novarro are typical of the claims of the Class Members in that Ms. Novarro was misclassified as an independent contractor during the period when the pre-Modified Plans were in effect; was reclassified as an employee after the modification of the plans on January 1, 1997; was not provided with benefits under the pre-Modified Plans; was not provided with summary plan or other information concerning the availability of benefits under the pre-Modified Plans; was not informed of the existence of the pre-Modified Plans after her reclassification as en employee; and was provided with materially misleading information concerning her ERISA rights after the modification of the pre-Modified Plans.

125. Ms. Novarro is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

126. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

127. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands judgment:

(1)   Under Count I, for damages resulting from her exclusion from the pre-Modified Plans and/or the loss of benefits rightfully available thereunder pursuant to ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) in an amount to be determined at trial;

(2)   Under Count II, for damages resulting from Defendants' breach of fiduciary duty and an adjustment to the Retirement Plan currently in effect for the years during which Ms. Novarro would have benefitted from plan coverage under the pre-Modified Plans but for Defendants' actions and omissions, pursuant to ERISA §502(b), 29 U.S.C. § 1132(b);

(3)   Under Count III, for damages in an amount to be determined at trial resulting from Defendants' interference with Ms. Novarro's attainment of protected rights pursuant to ERISA § 510, 29 U.S.C. § 1140, together with attorneys' fees under 29 U.S.C. § 1132(g)(1).

(4)   Under Count IV, for damages in an amount to be determined at trial for breach of fiduciary duty, together with attorneys' fees under New York common law;

(5)   Under Count V, for damages in an amount to be determined at trial for fraudulent misrepresentation, together with punitive damages and attorneys' fees under New York common law;

(6)  Under Count VI, for a declaratory judgment that the "independent contractor" agreements executed by Ms. Novarro are void and unenforceable and that Ms. Novarro was employed as a common law employee subject to an implied-in-fact employment contract from February 25, 1992 to September, 1998;

(7)  Under Count VII, for damages in an amount to be determined at trial for breach of implied-in-fact contract;

(8)  Certifying Counts VIII-X as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure Rule and appointing Ms. Novarro as class representative;

(9)  Under Count VIII, for damages to the Class Members resulting from their exclusion from the pre-Modified Plans and/or the loss of benefits rightfully available thereunder pursuant to ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) in an amount to be determined at trial;

(10) Under Count IX, for damages resulting from Defendants' breach of fiduciary duty and a retroactive adjustment to the Retirement Plans applicable to the Class Members after their reclassification for the years during which Class Members would have benefitted from plan coverage under the pre-Modified Plans but for Defendants' actions and omissions, pursuant to ERISA §502(b), 29 U.S.C. § 1132(b);

(11) Under Count X, for damages in an amount to be determined at trial resulting from Defendants' interference with Class Members' attainment of protected rights pursuant to ERISA § 510, 29 U.S.C. § 1140, together with attorneys' fees under 29 U.S.C. § 1132(g)(1);

(12) Awarding Ms. Novarro a reasonable fee as class representative;

(13) Certifying Count XI as a class action under NY CPLR § 901(a) and appointing Plaintiff as class representative.

(14) Under Count XI, for damages in an amount to be determined at trial for breach of fiduciary duty, together with attorneys' fees under New York common law; and

(15) Such other relief as this Court deems just and proper.

Dated:  New York, New York,
   September 25, 2017

       **QUAINTON LAW, PLLC**
       1001 Avenue of the Americas, 11th Floor
       New York, New York 10018
       (212) 813-8389
       *Attorneys for Plaintiff*
       *Andrea Bilich Novarro*

       By:  */s/ Eden P. Quainton*_____
       EDEN P. QUAINTON, ESQ.